## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

_____

IN RE: NATIONAL PRESCRIPTION    )
OPIATE LITIGATION                 )                  MDL Docket No. 2804

_____  )

*Walmart Inc. v. U.S. Department of Justice; Attorney General William P. Barr; U.S. Drug Enforcement Administration; Acting Administrator Timothy J. Shea,* **E.D. Tex., Case No. 4:20-cv-00817.**

### NOTIFICATION OF DEVELOPMENTS

Pursuant to Rule 6.1(f) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, the Plaintiffs' Executive Committee (the "PEC") appointed in *In re: National Prescription Opiate Litigation*, MDL No. 2804 (the "Opioid MDL"), hereby notifies the Clerk of the Panel of certain developments in the Opioid MDL that directly bear on the Panel's decision as to whether to transfer the above-referenced declaratory judgment action filed by Walmart Inc. ("Walmart") in the Eastern District of Texas.[1]  As explained below, Walmart's action is a blatant attempt at forum-shopping in the hopes of re-litigating certain legal issues that have already been resolved against it in the Opioid MDL.  To the extent the action is not quickly dismissed as baseless by the district court, it more appropriately belongs in the Opioid MDL because it involves common legal and factual questions with actions previously transferred to the Opioid MDL, and transfer will promote the convenience of parties and witnesses and the just and efficient conduct of the action.

---

[1]    While the PEC would have expected Walmart to inform the Panel of these developments, it has failed to do so.

I.      **Procedural Background**

On December 5, 2017, the Panel created the Opioid MDL and assigned it to the Honorable Dan A. Polster in the Northern District of Ohio to preside over pretrial proceedings. *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379-80 (U.S. Jud. Pan. Mult. Lit. 2017). The Panel recognized that Judge Polster's prior MDL experience "has provided him valuable insight into the management of complex, multidistrict litigation" and expressed its confidence that "Judge Polster will steer this litigation on a prudent course." *Id.*

There are now thousands of cases in the Opioid MDL. The plaintiffs are primarily governmental entities that have asserted claims against a variety of defendants, including the manufacturers of prescription opioids, the distributors of these opioids, and the pharmacies that dispense these opioids. One of those defendants is Walmart.

On October 22, 2020, Walmart filed the above-referenced declaratory judgment action against the federal government in the Eastern District of Texas, seeking "to resolve a dispute with the U.S. Department of Justice (DOJ) and the U.S. Drug Enforcement Administration (DEA) about the obligations of pharmacists and pharmacies under the Controlled Substances Act (CSA)." *See In re: National Prescription Opiate Litigation,* MDL No. 2804 (U.S. Jud. Pan. Mult. Lit.) ("JPML Dkt.") at Dkt. No. 8741-3 (Complaint for Declaratory Relief), p. 1; *see also id.* at p. 10 (filing action "to obtain a declaration resolving its disputes of law with Defendants and clarifying its legal rights and duties under the CSA and its implementing regulations").

On October 29, 2020, Webb County, Texas, filed a Notice of Potential Tag-Along, seeking transfer to the Opioid MDL pursuant to Rule 7.1(a). JPML Dkt. No. 8741. The Clerk of the Panel denied transfer on October 30, 2020 (JPML Dkt. No. 8742), citing Rule 7.1(b)(i), which permits an involved party to subsequently move for transfer pursuant to Rule 6.1.

## II.     Developments in the Opioid MDL Relevant to the Panel's Disposition of Walmart's Declaratory Action.

To be clear, the PEC believes that Walmart's declaratory action is entirely baseless for a variety of reasons and anticipates that the defendants in that action will move to dismiss the case in short order. For the reasons discussed herein, the PEC respectfully suggests that any such motion is best resolved by Judge Polster in the Opioid MDL. It may be, however, that the Panel is not inclined to transfer the action before the resolution of motions to dismiss, since dismissal of the action will render moot any need for transfer. But to the extent the underlying action is not quickly dismissed, the PEC wishes to bring to the Panel's attention certain developments from the Opioid MDL that demonstrate that transfer of the action would accomplish the objectives of Section 1407. Specifically, there are common questions of law and fact,[2] and transfer would further the convenience of the parties and the witnesses, and promote the just and efficient conduct of the action. 28 U.S.C. § 1407(a).

For almost three years Judge Polster has diligently overseen what "[m]any

---

[2]   "'Section 1407 does not require a complete identity or even a majority of common factual and legal issues.'" *In re Infants Born Opioid-Dependent Prod. Liab. Litig.*, 350 F. Supp. 3d 1377, 1379 n.5 (U.S. Jud. Pan. Mult. Lit. 2018) (citation omitted).

commentators and analysts have called . . . the most complex and important group of cases ever filed[.]"  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4686815, at *1 (N.D. Ohio Sept. 26, 2019).  Massive amounts of discovery have taken place and Judge Polster has considered and ruled on thousands of pages of pretrial briefing. He is incredibly knowledgeable about the factual and legal issues present in this litigation, and is very familiar with many of the documents and witnesses (both expert and fact) relevant to the parties' contentions.

Probably no issue has been litigated more thoroughly in the Opioid MDL than the duties and obligations imposed by the CSA on opioid distributors and dispensers. Notably, Judge Polster has **not** agreed with Walmart's interpretation of the CSA and its implementing regulations.  Clearly unhappy with his resolution of these issues, Walmart now seeks to re-litigate them before a different court in the apparent hopes of receiving a different result.  Specifically, Walmart is requesting that the district court in the Eastern District of Texas declare the following:

- "Pharmacists may be liable under the CSA and its regulations only when they fill a prescription that they know was not issued for a legitimate medical purpose by a prescriber acting in the usual course of the prescriber's professional practice or when pharmacists knowingly abandon all professional norms;"

- "The CSA does not require pharmacists to second-guess a registered and licensed doctor's decision that a prescription serves a legitimate medical purpose;"

- "The CSA and its regulations do not require pharmacists to refuse to fill entire categories of prescriptions without regard to individual facts and circumstances;"

- "The CSA and its regulations do not require pharmacists to document in writing why filling a prescription was appropriate;"

- "Pharmacies do not have an affirmative obligation under the CSA and its regulations to analyze and share aggregate prescription data across its stores and with line pharmacists;"

- "Pharmacies do not have an affirmative obligation under the CSA and its regulations to impose corporation-wide refusals-to-fill for particular doctors;"

- "The CSA and its regulations do not require distributors not to ship suspicious orders after reporting them;"

- "The CSA and its regulations did not impose monetary penalties for failure to report suspicious orders to DEA during the time Walmart self-distributed; and"

- "[The DEA/DOJ] must follow their own regulations and may not base any enforceable legal positions on the alleged violation of agency guidance rather than obligations found in a statute or duly promulgated rule or regulation."

JPML Dkt. No. 8741-3 (Complaint for Declaratory Relief), at pp. 52-53.

These arguments were pursued by Walmart and other defendants in the Opioid MDL,[3] and have been rejected by Judge Polster. *See, e.g., In re Nat'l Prescription Opiate Litig. (Track 1 Cases)*, No. 1:17-MD-2804, 2019 WL 3917575, at *9 (N.D. Ohio Aug. 19, 2019)

---

[3] *See, e.g., In re: National Prescription Opiate Litigation (Track 3 Cases)*, 2020 WL 4199537 (N.D. Ohio June 16, 2020) (Pharmacy Defendants' Memorandum of Law in Support of Motion to Dismiss Second Amended Complaints); *In re: National Prescription Opiate Litigation (Track 3 Cases)*, 2020 WL 4199543 (N.D. Ohio July 13, 2020) (Pharmacy Defendants' Reply in Support of Their Motion to Dismiss Second Amended Complaint); *In re: National Prescription Opiate Litigation*, Case No. 1:17-md-02804 (N.D. Ohio) ("MDL Dkt.") at MDL Dkt. No. 3439 (Pharmacy Defendants' Motion for Reconsideration or Certification and Supporting Memorandum); *In re: National Prescription Opiate Litigation (Track 1 Cases)*, 2019 WL 9468021 (N.D. Ohio July 19, 2019) (Memorandum in Support of Motion for Summary Judgment of Walmart Inc.); *In re: National Prescription Opiate Litigation (Track 1 Cases)*, 2019 WL 9518082 (N.D. Ohio Aug. 7, 2019) (Corrected Defendants' Response to Plaintiffs' Motion for Partial Summary Adjudication on Defendants' Compliance with the Controlled Substances Act); *In re: National Prescription Opiate Litigation (Track 2 Cases)*, 2018 WL 3617001 (N.D. Ohio June 8, 2018) (Pharmacy Defendants' Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint).

("[T]he Court concludes that the CSA statutory and regulatory duties to maintain effective controls against diversion includes a duty not to ship suspicious orders");[4] *In re Nat'l Prescription Opiate Litig. (Track 3 Cases)*, No. 18-OP-45032, 2020 WL 4550400, at *13 (N.D. Ohio Aug. 6, 2020) ("In sum, the Court concludes that Pharmacy Defendants have failed to meet their burden of demonstrating there is no corporate-level obligation to design and implement systems, policies, or procedures to identify red flag prescriptions. And the Pharmacy Defendants' ultimate argument—that they cannot be liable to Plaintiffs because only their pharmacist-employees are responsible for preventing diversion of opioids via illegitimate prescriptions—is premised upon a tortured reading of the CSA and its regulations.  Because Defendants' reading of the CSA is antithetical to its very purpose, the Court rejects Defendants' positions.");[5] *In Re Nat'l Prescription Opiate Litig. (Track 3 Cases)*, No. 1:17-MD-2804, 2020 WL 5642173, at *2-3 (N.D. Ohio Sept. 22, 2020) ("The CSA's fundamental mandate that *every* pharmacy-registrant must 'provide

---

[4]   *See also id.* at *9 ("Defendants assert that the agency adjudications . . . do not impose legal requirements on other registrants.  The Court disagrees.  Federal agencies exercise broad discretion to carry out their statutory mandate through adjudication and to announce policies or principles that may affect non-parties.  Accordingly, the Court rejects defendants' arguments that the principles announced in agency adjudications do not apply to them.") (internal citations omitted), *9 n.13 ("In reaching this result, the Court does not rely on the DEA letters of 2006 and 2007, and instead relies simply on the language of the statute and regulations themselves, as interpreted by federal courts.  The Court notes, however, that the DEA's statements in the letters are wholly consistent with this Court's conclusion.").

[5]   *See also id.* at *6 ("[T]he Pharmacy Defendants now ask the Court to conclude that the CSA, as a matter of law, does not impose any obligation on a pharmacy-registrant, itself, to identify or investigate dubious prescriptions prior to filling them.  The Court declines to do so, as this strained interpretation of the CSA would turn the fundamental purpose of the Act on its head."), *7-10, *11 ("There is no question that dispensers of controlled substances are obligated to check for and conclusively resolve red flags of possible diversion prior to dispensing those substances."), *12 ("[N]othing about using data to identify a suspicious prescription would work to override a pharmacist's ability to determine if the prescription was proper.  To the contrary, a data-driven analysis should assist and work in synergy with a pharmacist's expertise."), *12 (noting it is "clear" that pharmacies are required to "collect and maintain specific records and data regarding [their] dispensing activity").

*effective controls and procedures* to guard against theft and diversion of controlled substances,' means a pharmacy cannot be deliberately ignorant or willfully blind regarding its own prescription information. . . . To repeat: pharmacies may not 'do nothing with their collected data and leave their pharmacist-employees with the sole responsibility to ensure only proper prescriptions are filled'") (internal citations omitted) (emphasis in original).  Walmart's unhappiness with Judge Polster's rulings is not a sufficient justification for avoiding transfer of its declaratory action to the Opioid MDL. *See In re Suess Patent Infringement Litig.*, 384 F. Supp. 1405, 1407 (J.P.M.L. 1974) ("[T]he mere prospect of an unfavorable ruling by the transferee court or the possibility that another district judge may be more favorably disposed to a litigant's contentions are simply not factors considered by the Panel in determining whether a Section 1407 is appropriate.").[6]

Unlike Judge Polster, the Honorable Sean D. Jordan, the Eastern District of Texas judge assigned to Walmart's declaratory action, would be new to the factual and legal issues in this case, and the voluminous discovery and the pretrial disputes attendant to that discovery.  *See Suess Patent*, 384 F. Supp. at 1407 (in granting transfer, noting that MDL judge "has developed an expertise concerning the complicated subject matter involved in this litigation and is unquestionably in the best position to supervise the pretrial proceedings of all actions . . . toward their most just and expeditious

---

[6]   Moreover, Walmart should have notified the Panel regarding this related action (*see* JPML Rule 7.1(a)), as it has done with other actions.  *See, e.g.,* JPML Dkt. No. 8134 (7/24/20 Notice of Potential Tag-Along Action filed by Walmart); JPML Dkt. No. 8313 (8/21/20 Notice of Potential Tag-Along Action filed by Walmart).

termination."). Transfer of this action to the Opioid MDL will eliminate duplicative discovery, prevent potentially inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

Much of the discovery necessary for this action has already been completed in the Opioid MDL, which will allow the case to proceed more quickly if it is transferred to that court.[7] In particular, the DEA and other defendants have already produced millions of pages of documents in the Opioid MDL related to pharmacies' distribution and dispensing obligations under the CSA.[8] Additionally, the DEA has already produced at least ten witnesses for deposition in the Opioid MDL who have testified regarding these obligations (some for multiple days).[9] Other individuals likely to have discoverable

---

[7] Indeed, Walmart and a number of other pharmacy defendants are currently scheduled to start a bellwether trial before Judge Polster in May 2021 to determine, among other things, whether those defendants violated their distribution and dispensing obligations under the CSA. MDL Dkt. No. 3329 (Track Three Case Management Order Nunc Pro Tunc) at p. 7. At least one of the law firms representing Walmart (Jones Day) in the declaratory action also represents Walmart in the MDL. *See* MDL Dkt. No. 3401 (Jones Day Notice of Appearance for Walmart).

[8] The DEA (and former employees of the DEA) have collectively produced approximately 139,000 pages of documents, while other defendants in the MDL have produced approximately 3.26 million pages of documents relating to DEA issues.

[9] *See, e.g.,* MDL Dkt. No. 1983-17 (4/26/19 Joseph Rannazzisi Tr. Vol. 1) (Former DEA Head of Office of Diversion Control); MDL Dkt. No. 1983-18 (5/15/19 Joseph Rannazzisi Tr. Vol. 2); MDL Dkt. No. 1983-9 (4/17/19 Thomas Prevoznik Tr. Vol. 1) (DEA Associate Section Chief for the Pharmaceutical Investigations Section of the Diversion Control Division); MDL Dkt. No. 1983-10 (4/18/19 Thomas Prevoznik Tr. Vol. 2); MDL Dkt. No. 1983-11 (5/17/19 Thomas Prevoznik Tr. Vol. 3); MDL Dkt. No. 2173-40 (7/11/19 Michael Mapes Tr. Vol. 1) (Former DEA Diversion Investigator); MDL Dkt. No. 1974-7 (3/15/19 Demetra Ashley Tr.) (Former DEA Acting Assistant Administrator to the Diversion Control Center); MDL Dkt. No. 1985-24 (2/28/19 Kyle J. Wright Tr. Vol. 1) (DEA Staff Coordinator Regulatory Section); MDL Dkt. No. 1985-25 (3/4/19 Kyle J. Wright Tr. Vol. 2); MDL Dkt. No. 1977-24 (4/11/19 Stacy Harper-Avila Tr.) (DEA Section Chief on Quotas); MDL Dkt. No. 1984-22 (5/31/19 Matthew Strait Tr.) (DEA Senior Policy Advisor); MDL Dkt. No. 1974-11 (5/23/19 Lori Baker-Stella Tr. Vol. 2) (Detective, Summit County Sheriff's Office Drug Unit & Task Force Officer, DEA). Additional DEA witnesses who have been deposed in the Opioid MDL, but whose deposition transcripts have not been filed on the docket, include June Howard (DEA Chief of Targeting and Analysis Unit) and Keith Martin (DEA Assistant Special Agent).

information are Walmart's own current and former employees and executives, many of whom have testified by deposition in the Opioid MDL.[10]   The MDL parties have also conducted extensive expert discovery and related briefing regarding the scope of a pharmacy's duties under the CSA.[11]

For these reasons, transferring Walmart's declaratory action to the Opioid MDL would serve the very purposes for which multidistrict litigation was created:  furthering the convenience of the parties and the witnesses, and promoting the just and efficient conduct of the action.  *See* 28 U.S.C. § 1407(a); *In re: Bard IVC Filters Prod. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376 (U.S. Jud. Pan. Mult. Lit. 2015) ("Even if plaintiffs' counsel are successfully coordinating their discovery efforts and scheduling, re-litigation of the same issues in different courts significantly impacts the parties and the judiciary."); *Suess*

---

[10]   *See, e.g.,* MDL Dkt. No. 3026-12 (1/22/19 Susanne Hiland Tr. Vol. 1) (Walmart Senior Director in Health & Wellness Professional Relations & Clinical Quality Assurance); MDL Dkt. No. 3026-11 (1/23/19 Susanne Hiland Tr. Vol. 2); MDL Dkt. No. 3025-8 (1/15/19 Gregory Beam Tr.) (Walmart Director of Global Investigations); MDL Dkt. No. 3025-26 (1/9/19 George Chapman Tr.) (Walmart Senior Director in Health & Wellness Practice Compliance); MDL Dkt. No. 3025-40 (11/16/18 Chad Ducote Tr.) (Walmart Senior Director in Health & Wellness Supply Chain); MDL Dkt. No. 3026-16 (1/11/19 Debbie Hodges Tr.) (Walmart Vice President, Health and Wellness, PM DC Supply Chain); MDL Dkt. No. 3026-18 (12/12/18 Miranda Johnson Tr.) (Walmart Director of Controlled Substances in Health & Wellness Practice Compliance); MDL Dkt. No. 3027-12 (1/10/19 Roxanne Reed Tr.) (Walmart Senior Manager in Health & Wellness Practice Compliance); MDL Dkt. No. 3027-27 (1/4/19 Ramona Sullins Tr.) (Walmart Senior Manager in Health & Wellness Distribution); MDL Dkt. No. 3025-1 (11/15/18 Jeff Abernathy Tr.) (Walmart Member of Pharmacy Order Monitoring team); MDL Dkt. No. 3025-33 (12/13/18 JoLynn Coleman Tr.) (Walmart Senior Buyer in Pharmacy Merchandising); MDL Dkt. No. 3026-27 (12/14/18 Patsy Little Tr.) (Walmart Senior Buyer in Pharmacy Merchandising).

[11]   *See, e.g.,* MDL Dkt. No. 1899-19 (Report of Plaintiffs' Expert, James E. Rafalski, former DEA Diversion Investigator); MDL Dkt. No. 3027-10 (5/13/19 James Rafalski Tr. Vol. 1); MDL Dkt. No. 3027-11 (5/14/19 James Rafalski Tr. Vol. 2); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3934490, at *1-7 (N.D. Ohio Aug. 20, 2019) (Opinion and Order Regarding Defendants' Motions to Exclude Opinions of James Rafalski and Craig McCann); MDL Dkt. No. 1936-32 (Report of Walmart's Expert, Krista Tongring, former DEA Senior Attorney); MDL Dkt. No. 2172-2 (Report of Distributors' & Walgreens' Expert, Gregory K. Bell, consultant).

*Patent*, 384 F. Supp. at 1407 (transferring action to MDL because transfer "will eliminate the possibility of duplicative pretrial proceedings and inconsistent determinations").[12]

Dated: November 10, 2020

Respectfully submitted,

*/s/ Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

*/s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (fax)
jrice@motleyrice.com

---

[12]   *Cf. Infants*, 350 F. Supp. 3d at 1379 (declining to create second opioid MDL for claims involving opioid-addicted infants: "Discovery regarding the marketing, manufacture, distribution and diversion of prescription opiates in plaintiffs' cases will substantially overlap with that being undertaken in MDL No. 2804.   The transferee judge in a new MDL would need to coordinate on most matters pertaining to liability with the transferee court in MDL No. 2804.   Significantly, the risk of inconsistent pretrial rulings would increase dramatically were we to create another MDL, as plaintiffs request, before a judge in a district outside the Northern District of Ohio . . . .   The progress of both MDLs likely would be hindered by the need for two judges to attend to overlapping discovery matters, rule on redundant motion practice and administer both MDLs separately. . . .   The substantial duplication of activity would be costly, and it likely would slow the pace of MDL No. 2804, in which discovery and bellwether motion practice is underway").

*/s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*