## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: | ) |
| | ) |
| NATIONAL PRESCRIPTION OPIATE | ) |
| LITIGATION | ) |
| | ) |
| | ) |

MDL No. 2804

Relates to:     *Walmart Inc. v. U.S. Department of Justice, et al.,* E.D. Tex., Case No. 4:20-cv-00817.

## WALMART INC.'S RESPONSE TO PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION TO TRANSFER

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

BACKGROUND AND SUMMARY OF ARGUMENT ............................................. 1

I.    NO COMMON QUESTIONS OF FACT EXIST TO JUSTIFY TRANSFER ................... 2

    A.    Walmart's DJ Action Does Not Share Common Questions of Facts Warranting Transfer to the Opiate MDL ................................................................... 2

    B.    Potential Legal Overlap Cannot Justify Transfer........................................ 8

II.    TRANSFER WOULD NOT PROMOTE JUDICIAL EFFICIENCY OR THE CONVENIENCE OF PARTIES AND WITNESSES ........................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re ABA Law Sch. Accreditation Litig.*,
  325 F. Supp. 3d 1377 (J.P.M.L. 2018)....................................................................................4

*In re Am. Civil Liberties Union Freedom of Info. Act (FOIA) Requests
  Regarding Exec. Order 13769*,
  261 F. Supp. 3d 1348 (J.P.M.L. 2017)...........................................................................4, 8, 9

*In re Brazilian Prosthetic Device Bribery Litig.*,
  283 F. Supp. 3d 1381 (J.P.M.L. 2017)..................................................................................12

*In re Clean Water Rule: Definition of "Waters of the United States"*,
  140 F. Supp. 3d 1340 (J.P.M.L. 2015)........................................................................3, 4, 8, 9

*In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*,
  391 F. Supp. 763 (J.P.M.L 1975)...........................................................................................4

*In re Ecuadorian Oil Concession Litig.*,
  487 F. Supp. 1364 (J.P.M.L. 1980)......................................................................................12

*In re EPA Pesticide Listing Confidentiality Litig.*,
  434 F. Supp. 1235 (J.P.M.L. 1977)....................................................................................3, 4

*In re Hotel Indus. Sex Trafficking Litig.*,
  433 F. Supp. 3d 1353 (J.P.M.L. 2020)...................................................................................3

*In re Klein*,
  923 F. Supp. 2d 1373 (J.P.M.L. 2013)..................................................................................11

*In re "Lite Beer" Trademark Litig.*,
  437 F. Supp. 754 (J.P.M.L. 1977)........................................................................................10

*In re Mack Trucks, Inc. Antitrust Litig.*,
  405 F. Supp. 1400 (J.P.M.L. 1975)......................................................................................12

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
  652 F. Supp. 2d 1378 (J.P.M.L. 2009)..........................................................................4, 9, 11

*In re Nat. Gas Liquids Regulation Litig.*,
  434 F. Supp. 665 (J.P.M.L. 1977)......................................................................................3, 4

*In re Nat'l Prescription Opiate Litig.*,
  290 F. Supp. 3d 1375 (J.P.M.L. 2017)................................................................................1, 5

*In re Nat'l Prescription Opiate Litig.*,
  No. 18-OP-45032, 2020 WL 4550400 (N.D. Ohio Aug. 6, 2020) ...........................................6

*In re Not-for-Profit Hosps./Uninsured Patients Litig.*,
  341 F. Supp. 2d 1354 (J.P.M.L. 2004)...................................................................................3

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010,*
764 F. Supp. 2d 1352 (J.P.M.L. 2011)...................................................................................11

*In re Route 91 Harvest Festival Shootings in Las Vegas, Nev., on Oct. 1, 2017,*
347 F. Supp. 3d 1355 (J.P.M.L. 2018)...................................................................................11

*In re Scotch Whiskey,*
299 F. Supp. 543 (J.P.M.L. 1969)............................................................................................3

*In re Suess Patent Infringement Litig.,*
384 F. Supp. 1405 (J.P.M.L. 1974)..........................................................................................9

*In re The Boeing Co. Emp. Practices Litig. (No. II),*
293 F. Supp. 2d 1382 (J.P.M.L. 2003).....................................................................................3

*In re U. S. Navy Variable Reenlistment Bonus Litig.,*
407 F. Supp. 1405 (J.P.M.L. 1976)..........................................................................................4

*In re Uber Techs., Inc., Wage & Hour Emp. Practices Litig. (No. II),*
254 F. Supp. 3d 1376 (J.P.M.L. 2017)......................................................................................3

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015)....................................................................................................................7

**STATUTES**

28 U.S.C. § 1407................................................................................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 57.................................................................................................................12

David F. Herr, *Multidistrict Litigation Manual* § 8:1 (2020) ............................................2

J.P.M.L. R. 1.1....................................................................................................................10

J.P.M.L. R. 6.2......................................................................................................................1

J.P.M.L. R. 7.1...............................................................................................................1, 10

Walmart submits this response to the Plaintiffs' Executive Committee's (PEC) Motion to Transfer. (J.P.M.L Dkt. No. 8820). For the reasons below, the Motion should be denied.

## BACKGROUND AND SUMMARY OF ARGUMENT

This Panel previously centralized tort suits brought by state and local governments "concern[ing] the alleged improper marketing of and inappropriate distribution of various prescription opiate medications into cities, states and towns across the country." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1377 (J.P.M.L. 2017).

On October 22, 2020, Walmart brought a declaratory judgment action against the Department of Justice (DOJ), the Drug Enforcement Administration (DEA), Attorney General Barr, and Acting DEA Administrator Shea in the Eastern District of Texas. *See Walmart Inc. v. U.S. Dep't of Justice*, No. 4:20-cv-00817 (E.D. Tex.) (the "DJ Action"). That action seeks to resolve legal disputes between Walmart and the DJ Action Defendants regarding the availability of civil monetary penalties for alleged Controlled Substances Act (CSA) violations and the scope of Walmart's and its pharmacists' duties under the CSA and its implementing regulations.

On October 29, 2020, Webb County, Texas—one of the parties in the ongoing Opiate MDL—filed a Notice of Potential Tag-Along and sought to transfer the DJ Action to the MDL. (J.P.M.L. Dkt. No. 8741.) The next day, the Clerk of the Panel denied the request because Walmart's DJ Action was "not appropriate for inclusion in this MDL." (J.P.M.L. Dkt. No. 8742.) On November 13, 2020, the PEC—which is not a party to Walmart's DJ Action but purported to act pursuant to MDL Rules 6.2 and 7.1—made a second attempt to transfer Walmart's DJ Action to the Opiate MDL.

As the Clerk of the Panel previously determined, transfer is not appropriate. *First*, the statute authorizes transfer for "coordinated or consolidated pretrial proceedings" only when

"civil actions involving one or more common questions *of fact* are pending in different districts." 28 U.S.C. § 1407(a) (emphasis added).  But no common questions of fact exist here.  Instead, Walmart's DJ Action will be resolved by reference to the terms of the CSA and its implementing regulations, not the evidence currently being produced in the Opiate MDL.  While the PEC notes that related *legal* questions have been or could be addressed in the Opiate MDL, the Panel has repeatedly held that common questions of law do not warrant transfer without common questions of fact.

*Second*, even if the PEC *could* identify common questions of fact, transfer would still be inappropriate.  Transferring would hinder, not help, judicial economy by entangling the DJ Action parties' legal disputes with the Opiate MDL's complex and substantial factual development, while doing nothing to advance the Opiate MDL.  Transferring would also not serve the interests of the parties.  All parties to the DJ Action—both Walmart and the Defendants—oppose transfer.  And neither the PEC nor its clients will be harmed by keeping the DJ Action in Texas.  The PEC is not a party to the DJ Action, will not be burdened by litigation there, and cannot be bound by the result.  In short, Walmart's independent, separate attempt to clarify its and its pharmacists' legal obligations going forward should not be swept up in the mass tort trial preparation occurring in the Opiate MDL.

I.    **NO COMMON QUESTIONS OF FACT EXIST TO JUSTIFY TRANSFER.**

   A.    **Walmart's DJ Action Does Not Share Common Questions of Facts Warranting Transfer to the Opiate MDL.**

Section 1407(a) authorizes transfer for "coordinated or consolidated pretrial proceedings" "[w]hen civil actions involving one or more common questions of fact are pending in different districts."  28 U.S.C. § 1407(a); *see also* David F. Herr, *Multidistrict Litigation Manual* § 8:1 (2020) (the same substantive standard applies to initial transfer decisions and tag-along transfer

decisions).  In keeping with this plain text, the Panel has made clear that unless the actions "share sufficient common questions of fact," they cannot "warrant Section 1407 transfer."  *In re Not-for-Profit Hosps./Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1356 (J.P.M.L. 2004); *see also, e.g.*, *In re Uber Techs., Inc., Wage & Hour Emp. Practices Litig. (No. II)*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017); *In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015); *In re EPA Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977); *In re Nat. Gas Liquids Regulation Litig.*, 434 F. Supp. 665, 668 (J.P.M.L. 1977).  The Panel has also made clear that "the moving party bears a strong burden to show" that those common factual questions "are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses."  *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969); *see also, e.g.*, *In re The Boeing Co. Emp. Practices Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003) (same).

The Panel's case law reflects this emphasis on common, significant factual questions. For example, the Panel has regularly refused to transfer where cases raise identical *legal* issues but no common issues of fact.  In this vein, it recently denied a motion where the plaintiffs all alleged that they had suffered similar torts at hotels across the country and that the hotels were liable under the same federal statute.  *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1354 (J.P.M.L. 2020).  The Panel acknowledged that all the plaintiffs were raising a "common claim for relief" and that "common questions as to the statute's interpretation" would arise.  *Id.* at 1356.  But it still denied centralization because "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions."  *Id.*; *see also In*

*re Not-For-Profit Hosps./Uninsured Patients Litig.*, 341 F. Supp. 2d at 1356 (numerosity of actions cannot replace the statutory predicate of "sufficient common questions of fact").

Similarly, the Panel has denied transfer where the "actions involve nearly identical legal challenges" that "share" certain limited "factual questions." *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018).  For example, the Panel refused to consolidate a host of Freedom of Information Act lawsuits brought by the American Civil Liberties Union related to implementing the Trump Administration's travel ban at certain airports and border crossings.  *In re Am. Civil Liberties Union Freedom of Info. Act (FOIA) Requests Regarding Exec. Order 13769*, 261 F. Supp. 3d 1348 (J.P.M.L. 2017).  Even though the actions "arguably share[d] a limited number of factual issues," the main question in the cases— whether the government properly withheld the material in question—was "a legal issue," not a factual one.  *Id.* at 1348–49.  The Panel similarly rejected the government's request to consolidate a number of challenges to the Obama Administration's Waters of the United States Rule, reasoning that the cases would "turn on questions of law" and therefore that "centralization under Section 1407 is inappropriate."  *In re Clean Water Rule*, 140 F. Supp. 3d at 1341.  These cases are not outliers.  *See, e.g.*, *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009); *In re EPA Pesticide Listing Confidentiality Litig.*, 434 F. Supp. at 1236; *In re Nat. Gas Liquids Regulation Litig.*, 434 F. Supp. at 668; *In re U. S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1407 (J.P.M.L. 1976); *In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L 1975).

Given the differences between Walmart's DJ Action and the cases in the Opiate MDL, the PEC has not made and cannot make the required showing of common questions of fact. Walmart's DJ Action seeks to resolve legal questions about the obligations of pharmacists,

- 4 -

pharmacies, and distributors under the CSA and its implementing regulations.  To the extent there are relevant facts, they relate solely to the positions taken by DOJ and DEA regarding their ability to seek civil penalties against Walmart under the CSA and its implementing regulations— facts that are not at issue in the Opiate MDL.  The requests for declaratory relief quoted in the PEC's motion prove as much.  For example, Walmart seeks a declaration that DOJ may seek civil penalties from pharmacists "only when they fill a prescription that they know was not issued for a legitimate medical purpose by a prescriber acting in the usual course."  Mot. 4 (quoting Complaint for Declaratory Relief at 52).  But the scope of pharmacists' general liability under those provisions turns on the legal meaning of those provisions and the federal government's ability to seek civil penalties, not on historical facts about any particular pharmacy's or pharmacist's practices.  Similarly, Walmart seeks a declaration that "[t]he CSA and its regulations did not impose monetary penalties for failure to report suspicious orders to DEA during the time Walmart self-distributed."  Mot. 5 (quoting Complaint for Declaratory Relief 53).  Again, the availability of monetary penalties depends on the terms of the statute and DEA's lawfully promulgated rules; it does not depend on any particular distributor's conduct, or even on facts about distribution more generally.

The focus of the Opiate MDL is different.  There, a host of cities, counties, and other plaintiffs seek damages and abatement from various entities within the chain of opioid distribution under theories of public nuisance and unjust enrichment, alleging that "manufacturers of prescription opioid medications overstated the benefits and downplayed the risks" of those products; that "distributors failed to monitor, detect, investigate, refuse and report suspicious orders" of them, *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1378; and that pharmacies unlawfully dispensed them, *see In re Nat'l Prescription Opiate Litig.*, No. 18-

OP-45032, 2020 WL 4550400, at *1 (N.D. Ohio Aug. 6, 2020).  Unlike Walmart's request for declaratory relief, the tort cases within the Opiate MDL require the resolution of a host of factual questions—about, for example,

- the causes of the opioid epidemic;

- research into the safety and efficacy of opioids;

- the marketing and promotion of opioids;

- how each manufacturer, distributor, and pharmacist handled opioids; and

- whether harms in specific communities can be traced to any alleged nuisance.

The answers to those questions are not needed to resolve Walmart's questions about the CSA, its regulations, or the federal government's ability to seek civil penalties under those provisions. There are thus no common questions of fact to justify transferring Walmart's request for prospective declaratory relief to the Opiate MDL.

The PEC does not meaningfully argue otherwise.  It makes the conclusory assertion that Walmart's DJ Action shares "common questions of … fact" with the cases in the Opiate MDL. Mot. 3; *see id.* at 8 (gesturing at the "discovery necessary" for the declaratory judgment action). But the PEC does not specify those common questions of fact or explain how they would affect the resolution of the DJ Action.  In fact, the PEC's cited evidentiary materials, *see* Mot. 8–10 & nn.7–10, underscore the absence of any real factual connection between Walmart's DJ Action and the Opiate MDL.  As the PEC notes, many current and former DEA officials have testified in the Opiate MDL.  But the PEC does not connect any of this testimony to the issues raised in Walmart's DJ Action.   It cannot be done.  To take a few examples, Stacey Harper-Avila's testimony about manufacturing quotas, Matthew Straight's testimony about the Government Accountability Office's criticism of DEA, and Keith Martin's testimony about his anti-

- 6 -

trafficking (rather than anti-diversion) efforts shed no light on the meaning of the CSA or its implementing regulations.  (*See* 4/11/19 Stacy Harper-Avilla Tr., *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 24, 2019), Dkt. No. 1977-24; 5/31/19 Matthew Strait Tr., *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 24, 2019), Dkt. No. 1984-22).[1]  And even where a DEA officer's testimony *does* address the CSA or its implementing regulations—such as Kyle Wright's testimony that DEA could not give registrants guidance on whether their suspicious order monitoring system sufficed (2/28/19 Kyle J. Wright Tr. Vol. 1, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio July 24, 2019), Dkt. No. 1985-24)—that testimony at most speaks to the DJ Action Defendants' ability separately to pursue civil penalties despite their own conduct.  It sheds little light on the legal meaning of the CSA and its implementing regulations.  *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015).

So too for Walmart witnesses that the PEC cites.  *See* Mot. 9–10 n.9.  While those witnesses have shown Walmart's compliance efforts over the years, they have not provided, and cannot provide, testimony that resolves Walmart's dispute with DOJ and DEA about the meaning of the law or those agencies' ability to seek civil penalties against Walmart under that law.  It is little surprise, then, that neither Walmart's Complaint nor its effort to secure summary judgment on many of its claims mentions the evidence noted by the PEC.  Simply put, Walmart's DJ Action does not share common factual questions with the Opiate MDL that might support transfer.

---

[1] As the PEC noted, some of the deposition transcripts, including Keith Martin's, have not been filed on the docket.  Mot. 9 n.8.

**B.       Potential Legal Overlap Cannot Justify Transfer.**

Unable to identify the requisite factual connection, the PEC spends most of its time arguing that transfer is appropriate because "[t]he core *issue* in [Walmart's DJ Action]—the duties and obligations imposed by the [CSA] on opioid distributors and dispensers—has already been litigated in the Opioid MDL."  Mot. 1 (emphasis added); *see also, e.g.*, *id.* at 3 ("Transfer is appropriate" because the cases "involve[] common questions of law"); *id.* at 4 ("Probably no issue has been litigated more thoroughly in the Opioid MDL than the duties and obligations imposed by the CSA on opioid distributors and dispensers."); *id.* at 4–7 (cataloguing the supposedly similar legal arguments and decisions in the Opiate MDL).

Walmart does not concede that the legal issues in the cases are the same, given the material distinctions between the legal arguments rooted in state law advanced by Opiate MDL Plaintiffs and those relevant to the federal government's enforcement of the CSA.  But the PEC's claim on this front is in any case irrelevant.  As explained above, the statute requires "common *questions of fact*"; common questions of law do not suffice.  28 U.S.C. § 1407(a) (emphasis added); *see supra* 4–5 (collecting cases).  If transfer was not warranted for identical legal challenges to promulgated rules, *see In re Clean Water Rule*, 140 F. Supp. 3d at 1341, or for "nearly identical legal challenges" to FOIA decisions that "share[d] a limited number of factual issues," *In re ACLU FOIA Requests*, 261 F. Supp. 3d at 1348–49, then it certainly is not warranted simply because the Opiate MDL might have touched on some of the issues raised in Walmart's DJ Action.

The PEC does not mention this rule against transferring cases that raise only common legal issues or attempt to distinguish the cases applying it.  Instead, it makes generic arguments about the desire to send litigation to MDL judges who have "developed an expertise concerning the complicated subject matter involved" and to avoid inconsistent pretrial rulings.  Mot. 8

(quoting *In re Suess Patent Infringement Litig.*, 384 F. Supp. 1405, 1407 (J.P.M.L. 1974)); *see also id.* at 7–8.  But the presence of judicial experience does not relieve the movant of its burden to show that the action "raises questions *of fact* common to the actions previously transferred." *In re Suess*, 384 F. Supp., at 1406 (emphasis added).  Moreover, such experience matters primarily—if not entirely—where it will allow the judge to rule on factually intensive pretrial disputes, and there are no such disputes in Walmart's DJ Action.  Finally, the desire "to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify" transfer.  *Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d at 1378.  That is particularly true when, as here, "resolution of the[] actions will involve," at most, "very limited pretrial proceedings" and "minimal" discovery.  *In re Clean Water Rule*, 140 F. Supp. 3d at 1341; *see also In re ACLU FOIA Requests*, 261 F. Supp. 3d at 1349 (the limited factual issues "appear[ed] relatively straightforward and unlikely to entail extensive pretrial proceedings").

## II.   TRANSFER WOULD NOT PROMOTE JUDICIAL EFFICIENCY OR THE CONVENIENCE OF PARTIES AND WITNESSES.

Even if the PEC had identified common questions of fact that could satisfy the minimum *requirement* for transfer, the other factors that the Panel considers cut decidedly against it.

Consider first the "convenience of parties."  28 U.S.C. § 1407(a).  Walmart, for its part, opposes litigating its distinct lawsuit as part of the Opiate MDL because of the delay that such a transfer would likely cause in its attempt to clarify its and its pharmacists' legal obligations vis-à-vis the DJ Action Defendants' threatened civil penalties.  Walmart has also been informed that the United States—in keeping with its prior statements to the district judge presiding over the MDL about its own enforcement actions—opposes transfer of Walmart's pre-enforcement challenge.  *See* Statement of Interest at 8, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018) (explaining that the United States "does not believe that it

- 9 -

would be proper to consolidate a possible [enforcement] action" brought by the United States "in this multidistrict litigation").

The Panel has previously recognized that it should not transfer over the mutual objection of the parties, at least not without compelling reason. *See, e.g.*, *In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755–756 (J.P.M.L. 1977). That is true as a prudential matter; if both of the parties to the action oppose transfer, then there is strong reason to believe that transfer will not spare them or the courts of the burdens of duplicative litigation or otherwise serve the purposes for which Section 1407 was enacted. It is also true as a matter of statute and of the Panel's rules, which focus on the parties to the case to be transferred, not on third parties who will not be affected by their litigation. *See* 28 U.S.C. § 1407(c)(ii) (proceedings for transfer "may be initiated by" either the Panel or by "motion filed … by a party in any action in which transfer … may be appropriate"); J.P.M.L. R. 7.1(a) (requiring "[a]ny party or counsel in actions previously transferred" to "promptly notify the Clerk … of any potential tag-along actions in which that party is also named or in which that counsel appears"); J.P.M.L. R. 7.1(b)(i) (allowing an "involved party" to "move for … transfer" of a potential tag-along action if the Clerk declines to enter a conditional transfer order).[2]

The PEC provides no reason to disregard Walmart's and the United States' clear objections here. It does not, for instance, cite any harm that may come to its clients if Walmart's DJ Action proceeds in Texas. Nor is it obvious how there could be any. The PEC and its clients

---

[2] The PEC faults Walmart and its counsel for not "notif[ying] the Panel" of its "related action." Mot. 8 n.5. As just explained, Rule 7.1 requires a party or counsel in previously transferred actions to inform the Clerk "of any potential tag-along actions in which that party is also named or in which that counsel appears." But Rule 1.1(h) defines a "[t]ag-along action" in relevant part as one "which involves common questions of fact with … actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407." Walmart's DJ Action raises no such common questions of facts. *See supra* 3–7.

- 10 -

are not parties to that litigation and will not be bound by any ruling that the district court in

Texas makes.  At worst, they may have to distinguish out-of-circuit district court authority on

certain points when arguing before the MDL Court or in the Sixth Circuit on appeal.  But as

explained, the desire "to avoid two federal courts having to decide the same issue is … usually

not sufficient to justify Section 1407 centralization."  *Medi-Cal Reimbursement Rate Reduction*

*Litig.*, 652 F. Supp. 2d at 1378.  Rather, potential divergence on legal issues is the natural

consequence of the ordinary system of litigation.

   The "just and efficient conduct of [the litigation]," 28 U.S.C. § 1407(a), further counsels

against transfer here.  Transfer is not warranted where, for example, "there is no indication" that

the case "will require substantial discovery or that centralization would produce significant

efficiencies."  *In re Klein*, 923 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013).  For that reason, the

Panel normally declines to transfer declaratory judgment actions like Walmart's, which "do not,

on their own, present sufficiently numerous or complex common questions of fact."  *In re Route*

*91 Harvest Festival Shootings in Las Vegas, Nev., on Oct. 1, 2017*, 347 F. Supp. 3d 1355, 1357

(J.P.M.L. 2018); *see also In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on*

*Apr. 20, 2010*, 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011) (noting that the Panel "will, as a

general rule, decline to transfer" if an action "appear[s] to present 'strictly legal questions …

requir[ing] little or no discovery.'").  Transferring Walmart's DJ Action will not meaningfully

reduce Walmart's, the DJ Action Defendants', or the federal courts' workloads.

   There are also easy alternatives to transfer for any limited areas of factual overlap that

might require minimal discovery in Walmart's DJ Action.  For example, Walmart, DOJ, and

DEA could agree that discovery obtained in the Opiate MDL will be usable in Walmart's DJ

Action, or otherwise cooperate to avoid "any potentially duplicative discovery" in Walmart's

lawsuit.  *In re Brazilian Prosthetic Device Bribery Litig.*, 283 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).  And even if that cooperation somehow fell short, it is unclear why the PEC should care— again, it is not party to the DJ Action and will not shoulder the burdens of discovery there.

Finally, the differing stages and nature of the two proceedings suggests that transfer would not further judicial efficiency.  A simple legal claim "capable of prompt resolution . . . should not be entangled with" complex matters already transferred.  *In re Mack Trucks, Inc. Antitrust Litig.*, 405 F. Supp. 1400, 1401 (J.P.M.L. 1975).  As it stands, Walmart's DJ Action presents the best vehicle through which to resolve important, unanswered questions about the scope of civil penalties under the CSA and its implementing regulations—in fact, Walmart has already sought summary judgment on nearly all of its claims.  *Cf.* Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action.").  Rather than enhancing efficiency, transferring the DJ Action would slow it down, tying up Walmart's attempt to clarify its and its pharmacists' legal obligations going forward with the many broad and complex factual issues being litigated in the Opiate MDL.  By contrast, keeping Walmart's case where it is will not affect the progress in the Opiate MDL.  Of course, transfer should be denied where it "could delay the termination of [one] action without producing any overriding benefits."  *In re Ecuadorian Oil Concession Litig.*, 487 F. Supp. 1364, 1368 (J.P.M.L. 1980).

*     *     *

For the foregoing reasons, the Panel should deny the PEC's motion to transfer Walmart's unrelated DJ Action to the Opiate MDL.

Dated: December 4, 2020                    Respectfully submitted,

                                           */s/ Benjamin C. Mizer*

                                           Benjamin C. Mizer
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C.  20001-2113
                                           Telephone: (202) 879-3939
                                           Facsimile: (202) 626-1700
                                           bmizer@jonesday.com

                                           Attorneys for Plaintiff
                                           WALMART INC.