BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|   |   |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) ) ) | MDL Docket No. 2804 |

*Walmart Inc. v. U.S. Department of Justice; Attorney General William P. Barr; U.S. Drug Enforcement Administration; Acting Administrator Timothy J. Shea*, E.D. Tex., Case No. 4:20-cv-00817.

## PEC'S CONSOLIDATED REPLY SUPPORTING ITS MOTION TO TRANSFER

Despite the opposition of Walmart and the DOJ Defendants, the Panel can and should transfer the above-styled action to the Opioid MDL because (i) it involves one or more common questions of fact and law with actions pending in the Opioid MDL, and (ii) transfer will promote judicial efficiency and convenience to the parties and witnesses. 28 U.S.C. § 1407(a).

Both Walmart and the DOJ Defendants argue that there are no common questions of fact warranting transfer to the Opioid MDL, although their underlying rationales diverge. The DOJ Defendants' primary argument against transfer is that there is no basis for subject-matter jurisdiction before the District Court (or any federal court) over Walmart's declaratory action. JPML Dkt. No. 8903. The DOJ Defendants recently filed a motion to dismiss on these grounds in the underlying action. JPML Dkt. No. 8903-1. They also moved to stay further briefing on Walmart's summary judgment motion until their motion to dismiss is adjudicated. JPML Dkt. No. 8903-2. On December 16, 2020, Judge Jordan granted the DOJ Defendants' motion to stay, and provided a briefing schedule for the motion to dismiss. Declaratory Action Dkt. Nos. 62 & 65. Walmart's

response to the motion to dismiss is currently due no later than January 6, 2021, and the DOJ Defendants' reply is due no later than nine days after the response is filed (January 15, 2021).  Declaratory Action Dkt. No. 65.

In their opposition to the PEC's transfer motion, the DOJ Defendants note that these threshold issues of sovereign immunity and jurisdiction under Article III and the Declaratory Judgment Act "are not matters with particular relevance to the [Opioid] MDL."  JPML Dkt. No. 8903 at p. 5.  The PEC does not disagree.  It is for that reason that the PEC has requested, "in the alternative, that the action be transferred to the Opioid MDL to the extent it is not otherwise disposed of by the Eastern District of Texas through a motion to dismiss."  JPML Dkt. No. 8820-1 at p. 11.[1]

Walmart does not address the jurisdictional issues raised by the DOJ Defendants in its opposition to the PEC's transfer motion.  Rather, it takes the position that there are no common questions of fact raised in its declaratory judgment action justifying transfer.  JPML Dkt. No. 8902.  Specifically, Walmart claims that its action merely

> seeks to resolve legal questions about the obligations of pharmacists, pharmacies, and distributors under the [Controlled Substances Act] and its implementing regulations.  To the extent there are relevant facts, they relate solely to the positions taken by DOJ and DEA regarding their ability to seek civil penalties against Walmart under the CSA and its implementing regulations—facts that are not at issue in the Opiate MDL.

*Id.* at p. 5.

---

[1] As previously noted, briefing on the motion to dismiss should be completed by January 15, 2020.  Declaratory Action Dkt. No. 65.  This Panel has scheduled the PEC's transfer motion for hearing, without oral argument, on January 28, 2021.  JPML Dkt. No. 8922.

Walmart is trying to have it both ways. In order to avoid transfer, Walmart represents to this Panel that its declaratory action raises no fact issues. Of course, this contention is belied by its filings in the District Court. In its complaint, Walmart alleges that its action is ripe because "on information and belief, [the DOJ] Defendants intend to file a civil enforcement action based on alleged violations of the CSA and the False Claims Act, and Walmart disputes the **factual** and legal basis for such action." Declaratory Action Dkt. No. 1 at p. 52, ¶ 174. (emphasis added). Additionally, the summary judgment motion Walmart recently filed seeks only **partial** summary judgment. Declaratory Action Dkt. No. 21. If there were truly no fact issues to resolve, Walmart presumably would have sought summary judgment on the entire action.

More importantly, if Walmart's contention that its action raises no fact issues is true, it is not entitled to any declaratory relief and its action is entirely frivolous. The Declaratory Judgment Act (the "Act") permits district courts to declare the rights of parties to a "case of actual controversy." 28 U.S.C. § 2201(a). This phrase "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Declaratory judgment actions are justiciable under the Act and Article III when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant' relief[.]" *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In other words,

> [t]here must be a "definite and concrete," "real and substantial" dispute that "touches the legal relations of parties having adverse legal interests" and "admits of specific relief through a decree of a conclusive character, **as distinguished from an opinion advising what the law would be upon a hypothetical state of facts**."

*Amling v. Harrow Indus.*, 943 F.3d 373, 377 (7th Cir. 2019) (cleaning up and quoting *MedImmune*, 549 U.S. at 127) (emphasis added).

The Act does not itself "create a substantive cause of action." *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 945–46 (N.D. Tex. 2014), *aff'd sub nom. Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *see also Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990) ("The Declaratory Judgment Act is remedial only."). Rather, a party's legal interest must relate to an underlying cause of action "'arising under federal law that another asserts against him[.]'" *Collin Cty.*, 915 F.2d at 171 (citation omitted). It is that "**underlying cause of action** of the defendant against the plaintiff **that is actually litigated in a declaratory judgment action**[.]" *Id.* (emphasis added) *See also Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011) ("In a declaratory judgment action, the parties litigate the underlying claim[.]").

For example, it is a common and generally permissible use of the Act to obtain a declaration of nonliability for certain conduct where liability imminently threatens. *See NewPage Wis. Sys. Inc. v. United Steelworkers*, 651 F.3d 775, 777 (7th Cir. 2011). But an indispensable premise of such use is a specific set of facts on which any liability would

be imposed.² By contrast, a declaratory judgment action that seeks an interpretation of a law, contract, or other writing in the abstract, untethered from its application to particular facts, seeks an advisory opinion and is not justiciable. *See, e.g., Alvarez v. Smith*, 558 U.S. 87, 93 (2009) ("[A] dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'"); *Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 498 (7th Cir. 2014) ("It would be very nice to be able to ask federal judges for legal advice . . . . But that would be advisory jurisdiction, which" is inconsistent with Article III); *Elec. Bond & Share Co. v. SEC*, 92 F.2d 580, 592 (2d Cir. 1937) ("Until [plaintiffs] … contemplate a particular course of conduct which is proscribed by the provisions of the Act applicable to them, [they] can present no controversy"), *aff'd*, 303 U.S. 419 (1938).³

If, as Walmart claims, there are no factual issues to be resolved in its declaratory

---

² *See, e.g., Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003) (declaratory judgment action not moot because threat of prosecution existed for specific conduct within statute of limitations); *Monsanto Co. v. EPA*, 19 F.3d 1201, 1204 (7th Cir. 1994) ("The federal courts have long recognized in the declaratory judgment setting that once the parties are locked in controversy with stakes fixed by past events, it does not matter who initiates the litigation.").

³ *See also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) ("[A] dispute about an insurer's duty to indemnify generally is not ripe for decision until … the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is []certain."); *Kegler v. U.S. Dep't of Justice*, 436 F. Supp. 2d 1204, 1219 (D. Wyo. 2006) ("'[D]eclaratory judgment actions cannot be used to obtain answers to hypothetical questions. . . . [C]oncreteness of injury is crucial to exercise of judicial power.' . . . If the United States Code, perched on a law library shelf, qualified as an injury in fact, courts would not waste time—as they currently do—distinguishing between credible threats of imminent prosecution and potential (yet hypothetical) applications of a given statute.") (citation omitted).

action, then Walmart is merely seeking an advisory opinion from the District Court. This it cannot do. Walmart claims that its basis is a potential enforcement action under the CSA that the DOJ Defendants may bring against Walmart in the future. Declaratory Action Dkt. No. 46 at p. 3 n.1.[4] But any such enforcement action would necessarily require analysis of whether Walmart's dispensing and distribution conduct violated the CSA,[5] as Walmart concedes in its complaint. *See* Declaratory Action Dkt. No. 1 at p. 52, ¶ 174 (alleging that the "[DOJ] Defendants intend to file a civil enforcement action based on alleged violations of the CSA and the False Claims Act, and Walmart disputes the **factual** and legal basis for such action") (emphasis added).[6] These are the very same fact issues

---

[4] Walmart certainly has no cause of action against the DOJ Defendants under the CSA. As Walmart has argued repeatedly in the Opioid MDL, the CSA "does not confer a private right of action." MDL Dkt. No. 1864-3 at p. 2. A plaintiff may not obtain a declaratory judgment under a statute that provides no private right of action. *See Dallas Cty.*, 2 F. Supp. 3d at 947 ("[D]eclaratory judgment is a remedy, and a plaintiff may not obtain a declaratory judgment under a statute . . . that provides no private right of action.").

[5] For example, the court would have to analyze, among other things: (i) whether Walmart created and implemented a suspicious order monitoring system that sufficiently identified suspicious orders; (ii) whether Walmart timely reported suspicious orders to the DEA; (iii) whether Walmart conducted due diligence on orders flagged as potentially suspicious before shipping them to its customers; (iv) whether Walmart implemented effective controls and procedures at the pharmacy level to guard against diversion; and (v) whether Walmart ignored red flags raised by opioid prescriptions dispensed by its pharmacies.

[6] *See also id.* at p. 19, ¶ 57 ("On information and belief, DOJ intends to sue Walmart for filling prescriptions when there were what DEA calls 'red flags' . . ."), p. 36, ¶ 117 ("On information and belief, DOJ intends to seek massive liability based on the prescriptions Walmart's pharmacists filled for doctors whose prescriptions should supposedly have been rejected across the board."), p. 44, ¶ 142 ("On information and belief, [the DOJ] Defendants also intend to seek massive retroactive liability on Walmart under the view that its corporate-level policies violated the CSA."), p. 48,

being litigated in the Opioid MDL.[7] As noted in the PEC's motion, there has been extensive discovery (which is ongoing) and pretrial briefing in the MDL on these issues. JPML Dkt. No. 8820-1. Judge Polster has already rejected the same legal arguments raised by Walmart in its declaratory action and has held that there are fact issues regarding Walmart's distribution conduct that preclude summary judgment. *Id.*; *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 425965, at *2 (N.D. Ohio Jan. 27, 2020).[8] A bellwether trial to resolve issues related to Walmart's distribution and

---

¶ 155 ("[O]n information and belief, [the DOJ] Defendants intend to seek penalties related to Walmart's purported failure to submit suspicious order reports.").

[7] Thus, contrary to Walmart's assertions, its declaratory action is not a "simple legal claim 'capable of prompt resolution[.]'" JPML Dkt. 8902 at p. 12 (citation omitted). Resolution of the action will necessitate discovery regarding Walmart's dispensing and distribution policies, procedures, and conduct. *See In re: Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on Apr. 20, 2010*, 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011) (where declaratory judgment actions "require and rely on the same factual discovery as the already-centralized actions, transfer may be warranted"). The cases cited by Walmart are distinguishable. *See In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, on Oct. 1, 2017*, 347 F. Supp. 3d 1355, 1357 (J.P.M.L. 2018) (denying centralization of nine declaratory judgment actions because they "d[id] not, on their own, present sufficiently numerous or complex common questions of fact to merit centralization"); *In re: Klein*, 923 F. Supp. 2d 1373, (Mem)–1374 (J.P.M.L. 2013) (denying centralization of two actions where second action "was filed for the sole (and, in our view, improper) purpose of effecting the creation of an MDL . . ., and thus circumventing a possible unfavorable decision on a motion to dismiss for lack of personal jurisdiction" filed in the first action, and there was "no indication that the actions will require substantial discovery or that centralization would produce significant efficiencies"); *In re Mack Trucks, Inc. Antitrust Litig.*, 405 F. Supp. 1400, 1401 (J.P.M.L. 1975) (refusing to transfer action into existing MDL because it was "a simple contract action capable of prompt resolution, which should not be entangled with the complex antitrust matters previously transferred").

[8] There has not yet been summary judgment briefing regarding Walmart's dispensing conduct in the Opioid MDL.

dispensing conduct is currently set for the fall of 2021. MDL Dkt. No. 3574.[9]

Thus, if Walmart's declaratory action genuinely presents a live dispute, it is a dispute over the legal consequences of Walmart's actual distribution and dispensing conduct. In that case, there are clearly common questions of fact warranting transfer of the action to the Opioid MDL. 28 U.S.C. § 1407(a).

Walmart next argues that the PEC "'bears a strong burden to show' that [any] common factual questions 'are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses.'" JPML Dkt. No. 8902 at p. 3 (quoting *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) and citing *In re Boeing Co. Employment Practices Litig. (No. II)*, 293 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003)). Not so. In *Scotch Whiskey*, the Panel explained that a heightened burden was required when the movant seeks centralization of only a small number of actions:

> If this litigation involved the number of cases generally associated with multidistrict civil treble damage antitrust litigation, the common questions of fact might be sufficient to invoke 1407, **but where, as here, there are a minimal number of cases involved in the litigation** the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses.

299 F. Supp. at 544 (internal footnote omitted) (emphasis added). In *Boeing*, the Panel

---

[9] Although the bellwether trial involves the dispensing and distribution of opioids in two Ohio counties, the same policies and procedures under which Walmart distributed and dispensed those opioids were implemented nationwide.

made no mention of a heightened burden; it simply held that "[g]iven the minimal number of actions involved in this docket, movants have failed to persuade us that these actions involve sufficient common questions of fact to warrant Section 1407 centralization at the present time." 293 F. Supp. 2d at 1383.[10]

Moreover, even if the issues to be resolved in the declaratory action were purely legal (which they are not), the Panel is not automatically precluded from transferring the action to the MDL. *Cf. In re ClearTalk-ZTE Arbitration Litig.*, 24 F. Supp. 3d 1374, 1375 (J.P.M.L. 2014) (recognizing that compelling reasons may justify departure from general rule against centralization based solely on common legal issues). The cases cited by Walmart on this point are factually distinguishable; all but one of them addressed the appropriateness of initiating an MDL based solely (or primarily) on common legal issues, as opposed to the appropriateness of transferring an action with common legal issues into an existing MDL. *See In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1355–56 (J.P.M.L. 2020) (denying centralization of twenty-one actions that lacked common factual questions); *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) (denying centralization of three actions, noting there is a heavier burden to demonstrate appropriateness of centralization when only a few actions are

---

[10] The Panel further noted that it appeared that unique fact issues predominated over any common fact issues in the three actions, and that one of the actions might soon be resolved on summary judgment. *Id.* ("If after the Pennsylvania court has ruled on any summary judgment motions, it appears that any allegations of company-wide discrimination remain unresolved in the Pennsylvania actions, movants can again seek Section 1407 centralization.").

involved); *In re Am. Civil Liberties Union Freedom of Info. Act (FOIA) Requests Regarding Exec. Order 13769*, 261 F. Supp. 3d 1348, 1348–50 (J.P.M.L. 2017) (denying centralization of thirteen actions that lacked common factual questions); *In re Uber Techs., Inc., Wage & Hour Employment Practices Litig. (No. II)*, 254 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (denying centralization of three actions where actions were at different stages of litigation and centralization would create duplicative litigation rather than prevent it); *In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) (denying centralization of nine actions that were at different stages of litigation and were already subject to conflicting jurisdictional rulings); *In re: Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009) (denying centralization of six actions "pending in two districts within the same state" because benefits of centralization "not significant enough to justify transfer"); *In re Not-For-Profit Hosps./Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1355–56 (J.P.M.L. 2004) (denying centralization of actions that lacked common factual questions); *In re Envtl. Prot. Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1235-36 (J.P.M.L. 1977) (denying centralization of nine actions that lacked common factual questions); *In re Nat. Gas Liquids Regulation Litig.*, 434 F. Supp. 665, 667–68 (J.P.M.L. 1977) (denying centralization of eleven actions that lacked common factual questions and where "there was no danger of conflicting appellate determinations on the common legal question"); *In re U. S. Navy Variable Reenlistment Bonus Litig.*, 407 F. Supp. 1405, 1407 (J.P.M.L. 1976) (denying centralization of twenty-five actions because all but one could potentially be resolved by currently pending appeals); *In re E. Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764 (J.P.M.L. 1975) (**granting**

centralization of two cases where determination of the legality of airline's weight program raised some common factual questions and "the need to insure uniform disposition of the competing requests for class designations present[ed] a compelling reason for supervision of these actions in a single district").

Here, the Panel has already created the Opioid MDL. Notably, in the one case cited by Walmart that addressed the transfer of an action into an already existing MDL, the Panel held that transfer **was warranted**. *See Oil Spill*, 764 F. Supp. 2d at 1352–53 (transfer of several declaratory judgment insurance actions into BP Oil Spill MDL warranted where "the insurance policies at issue here involve coverage issues with respect to events at the core of the MDL" and "the insureds here are two of the principal defendants in the MDL"). Similarly, in the present case, Walmart is a defendant in the Opioid MDL and the legal questions raised in its declaratory action are core issues in the MDL upon which Judge Polster has already ruled. Walmart simply does not like his ruling. So in an effort to undermine the MDL process, Walmart concocted this declaratory action and filed it in a court that it hoped would look favorably on its claim. Such tactics are disfavored by courts.[11] In similar circumstances, courts have dismissed

---

[11] Indeed, one factor courts consider when determining whether to exercise jurisdiction over a declaratory judgment action is "[w]hether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an area for res judicata[.]'" *Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 952 (E.D. Mich. 2015) (citation omitted). This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* at 954 (citation omitted).

declaratory judgment actions filed preemptively for the purpose of forum shopping. *See, e.g.*, *Quicken*, 152 F. Supp.3d at 954 (dismissing Quicken's declaratory judgment action against federal government; "Given the procedural posture of this case, it certainly appears as though Quicken's complaint was filed for the purpose of acquiring a favorable forum; Quicken filed its lawsuit less than a week before the looming FCA enforcement action was filed. And Quicken's complaint actually acknowledged that the threat of the Government bringing an enforcement action prompted the filing of the instant action.").

Walmart's entire purpose for this lawsuit is to create inconsistent rulings on these issues – which is one of the very things the MDL process is meant to prevent. *See, e.g.*, *In re Deep Vein Thrombosis Litig.*, 323 F. Supp. 2d 1378, 1380 (J.P.M.L. 2004) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings (on jurisdictional issues and other matters), and conserve the resources of the parties, their counsel and the judiciary."). Such blatant forum shopping should be rejected. MDL parties should not be permitted to re-litigate MDL rulings simply by filing declaratory actions in other courts. Under these unique and compelling circumstances, transfer of Walmart's declaratory action is warranted even if the only issues to resolve are legal ones.

Finally, Walmart's argument that transfer would not promote judicial efficiency or the convenience of the parties and witnesses is without merit. That both Walmart and the DOJ Defendants oppose transfer is not dispositive. *See Nat. Gas*, 434 F. Supp. at 667 (noting that "the Panel has the power to order transfer in multidistrict litigation even if no party favors transfer"); *In re Asbestos & Asbestos Insulation Material Prod. Liab. Litig.*, 431

F. Supp. 906, 910 (J.P.M.L. 1977) ("In an appropriate situation, the Panel has the power to order transfer in multidistrict litigation even if all parties are opposed to transfer.").[12] Moreover, not wanting transfer does not mean transfer would not be more convenient for the parties and witnesses. Walmart is already a defendant and active participant in the MDL. Many witnesses have already been deposed regarding Walmart's dispensing and distribution policies and procedures and are likely to be called to testify in the upcoming bellwether trial. And it is beyond dispute that transfer would further judicial efficiency. Having another court analyze and resolve the same issues that have already been analyzed and resolved by Judge Polster is the epitome of inefficiency. Judge Polster is already well-versed in the facts and evidence related to Walmart's dispensing and distribution conduct specifically, as it has been the subject of a multitude of discovery disputes and pretrial briefing. JPML Dkt. No. 8820-1. The benefits of transfer are apparent.[13] Under these circumstances, Walmart's offer to cooperate with the DOJ

---

[12] The case cited by Walmart acknowledges this. *See In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755–56 (J.P.M.L. 1977) (denying centralization of five trademark actions; "Furthermore, **while not in itself determinative**, the nearly unanimous opposition of the parties to transfer, coupled with the absence of any party's affirmative support for transfer, is another persuasive factor in our decision to deny transfer.") (emphasis added).

[13] For that reason, *In re Ecuadorian Oil Concession Litig.*, 487 F. Supp. 1364 (J.P.M.L. 1980), cited by Walmart in its opposition, is inapposite. *Id.* at 1368 (denying centralization of two actions; "The Delaware action and the Florida action have each been pending for almost three and one half years. All parties represent that extensive document discovery is virtually complete in both actions; and a June 30, 1980 discovery cutoff has been established in the Delaware action. **Under these circumstances**, centralization of the Florida and Delaware actions could delay the termination of the Delaware action without producing any overriding benefit.") (emphasis added).

Defendants to avoid duplicative discovery is insufficient. *See In re: Standard & Poor's Rating Agency Litig.*, 949 F. Supp. 2d 1360, 1361–62 (J.P.M.L. 2013) (centralizing various sovereign enforcement actions despite plaintiffs' assurances of cooperation to avoid duplicative discovery; "There is also the risk, despite plaintiffs' current assurances of cooperation, that they may individually seek overlapping discovery or relitigation of rulings with which they disagree in the various courts. . . . Judicial efficiency will be enhanced by allowing a single judge—as opposed to fifteen—to rule on the remand motions and other pretrial matters, if necessary.").[14]

For these reasons, the PEC respectfully requests that the Judicial Panel on Multidistrict Litigation grant its motion and transfer this action to Judge Polster in the Northern District of Ohio for coordinated pretrial proceedings as part of MDL 2804.

---

[14] The case cited by Walmart is factually distinguishable. *See In re Brazilian Prosthetic Device Bribery Litig.*, 283 F. Supp. 3d 1381, 1381–82 (J.P.M.L. 2017) (denying centralization of three actions; "Different defendants are sued in each action, and there is no allegation that these defendants conspired or coordinated with one another. . . . The factual issues presented in each action thus will be primarily case-specific, and any overlapping discovery likely will be limited to discovery of the common plaintiff. There also is no significant risk of inconsistent pretrial rulings, as these actions are brought on an individual (not a class) basis against different defendants.")

Dated: December 22, 2020

Respectfully submitted,

*/s/ Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

*/s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (fax)
jrice@motleyrice.com

*/s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*