## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **In re: National Prescription Opiate Litigation** | |
| **This document relates to:** *Cobb County vs. Purdue Pharma, et al.* N.D. Ga. Civil Action No. 1:18-cv-02865-MLB | **MDL No. 2804** |

## PLAINTIFF COBB COUNTY'S BRIEF IN OPPOSITION
## TO PUBLIX'S MOTION TO VACATE

### INTRODUCTION

In vacating the original conditional remand order and issuing a new conditional remand order, the Panel merely cleared up any potential ambiguity about what was being remanded to the transferor court for trial. The entire procedural history of this case (Case Track 8 or CT8), and indeed the entire history of MDL 2804, makes it clear that, as part of the MDL Court's overall management of the MDL, *only* Cobb County's public nuisance claim, and *only* against Publix,[1] was to be remanded for trial. The MDL Court made that abundantly clear when Cobb County was selected as a bellwether, and when it bifurcated and ordered separate trials in the bellwether cases, staying each bellwether plaintiff's *other* claims against the pharmacy defendants, and also staying *all* of those bellwether plaintiffs' claims against *all other defendants*. Thereafter, Cobb County and Publix engaged in pretrial proceedings that recognized that reality.

Now, Publix incoherently (and incorrectly) argues both that Cobb County has asserted *only* a public nuisance claim against it, but at the same time argues that *all* of

---

[1] Publix Super Markets, Inc.

Cobb County's claims against it were transferred by the original order, and not merely the public nuisance claim. But Publix's argument about what constitutes a "claim" is purely semantic and elevates form over substance. Whether one says Cobb County's *claim* for public nuisance was remanded, or Cobb County's *cause of action* for public nuisance was remanded, or Cobb County's *count* for public nuisance was remanded, the record in the MDL is clear: the only thing the MDL Court intended to be tried in the transferor court was whether Publix is liable to Cobb County for creating or contributing to a public nuisance in Cobb County, Georgia—not any other claims, and not against any other parties.

The Panel's new conditional remand order simply reflects what was intended all along. Accordingly, the Panel should deny Publix's motion to vacate.

## ARGUMENT AND AUTHORITIES

### I.     The Panel has express authority to separate and remand claims and is not limited to remanding the entire "action."

It is beyond any reasonable dispute that the Panel may remand a *claim* without having to remand the entire *action*. In fact, the multidistrict litigation statute specifically authorizes what the JPML did here:

> Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however*, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

28 U.S.C. § 1407(a) (emphasis in original). This provision plainly recognizes a distinction between a "claim" and the "action," and the use of the emphasized transitional phrase

"*Provided, however*" communicates that the sentence following that phrase limits the sentence preceding the phrase. Accordingly, the instruction that "each *action* shall be remanded" is modified by the authority granted in the next sentence: "the panel may separate any *claim* … and remand any … such *claim* before the remainder of the *action* is remanded." (*Id.*, emphasis added). *See also In re Asbestos Prods. Liab. Litig. (No. VI)*, 545 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) (separating and remanding all of plaintiffs' claims "except the severed claims for punitive or exemplary damages"); *In re Brand-Name Prescription Drugs Antitrust Litig. ("Brand Name I")*, 170 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2001) (separating Sherman Antitrust Act claims from Robinson-Patman Act claims and remanding the Sherman Act claims to transferor courts, as suggested by transferee court); *In re Brand-Name Prescription Drugs Antitrust Litig. ("Brand Name II")*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) (Panel has "the authority to winnow particular claims from an action and remand only those claims"); *In re Collins*, 233 F.3d 809, 811 (3d Cir. 2000) (holding that punitive damages issue in asbestos litigation was separate "claim" which Panel could properly retain while remanding compensatory damages claims).

The JPML rules of procedure also specifically authorize separation of claims for remand:

> (b) Initiation of Remand. Typically, the transferee judge recommends remand of an action, *or a part of it*, to the transferor court at any time by filing a suggestion of remand with the Panel.  However, the Panel may remand an action *or any separable claim, cross-claim, counterclaim or third-party claim within it*, upon
>
>> (i) the transferee court's suggestion of remand,
>>
>> (ii) the *Panel's own initiative* by entry of an order to show cause, a

> conditional remand order or other appropriate order, or
>
> (iii) motion of any party.

Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Rule 10.2(b) (emphasis added). The Manual for Complex Litigation also recognizes that the JPML may remand separate "claims" to the transferor court, but it may not remand mere "issues" (unlike Fed. R. Civ. P. 42(b), which authorizes separate trials on "issues" or "claims"). MCL 4th § 20.133.

The Panel has previously described the separation provision in § 1407(a) as a "power" granted to the Panel that "is in harmony with a portion of [Fed. R. Civ. P. 42(b)] authorizing the ordering of separate trials of claims, cross-claims, counter-claims and third-party claims in furtherance of convenience and to avoid prejudice where conducive to expedition and economy." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 489 (J.P.M.L. 1968). As discussed more fully below, in ordering a separate trial under Rule 42(b), the MDL Court determined that a separate trial would "expedite and economize the resolution of these cases by simplifying the trial, make the case administratively manageable, and allow for focused assessment of claims and defenses relevant to a public nuisance action against the Pharmacy Defendants." (Master MDL Dkt. #3750 at 3).

Publix relies heavily on authorities discussing venue transfers under 28 U.S.C. § 1404, likely because § 1407 and the authorities discussing it are so clear. But that reliance is misplaced: unlike § 1407, § 1404 only permits transfer of the entire *action*:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any *civil action* to any other district or division where it might have been brought or to any district or division to which all

4

parties have consented.

28 U.S.C. § 1404(a) (emphasis added). The Panel has previously discussed the difference between, and interplay of, § 1407 and § 1404(a):

> For present purposes, the most significant feature of [§ 1404] is that it allows only the transfer of "actions." We compare and contrast that language with the language of section 1407, quoted supra at 3, which authorizes the transfer of "actions" and the remand not only of "actions" but also the remand of "claims" so long as that remand occurs while some part of the action remains pending before the transferee court.

*Brand Name II*, 264 F. Supp. 2d at 1377.

There simply is no support for Publix's argument that the Panel may not remand only certain "claims" to the transferor court and must instead remand the entire "action." The MDL statute expressly authorizes what the Panel did, the Panel's rules of practice authorize it, and the case law interpreting § 1407 authorizes it as well.

Whether remand is appropriate under § 1407 "for actions or claims in any particular multidistrict docket is based upon the totality of circumstances involved in that docket." *Brand Name I*, 170 F. Supp. 2d at 1352. However, "the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2020 WL 582151, at *1 (J.P.M.L. Feb. 5, 2020) (citation omitted); *see also Asbestos Prods.*, 545 F. Supp. 2d at 1363. The Panel has also specifically noted that when a transferee judge recommends remand of a "particular subset" of claims, the Panel "treat[s] such suggestions respectfully." *Brand Name II*, 264 F. Supp. 2d at 1376.

These observations carry even more weight here because the MDL Court has been tasked with overseeing one of the most complex litigations in history, and that Court's management of the MDL has successfully resulted in the resolution of thousands of claims through more than $70 billion in settlements earmarked for opioid abatement efforts nationwide. *See, e.g., Asbestos Prods.*, 545 F. Supp. 2d at 1363 (noting that the number of remands was "proportionally small, because under the transferee court's stewardship the vast majority of transferred actions have been successfully concluded in the transferee district during the course of Section 1407 pretrial proceedings. . . .  This success rate makes us particularly reluctant to overrule the transferee court's conclusions with respect to the appropriateness of remand.").

As shown below, the MDL Court had a specific plan for CT8 (and the other simultaneously designated pharmacy bellwether cases) that involved litigating only the public nuisance claim in diverse jurisdictions. The Panel should not permit Publix to thwart that plan by arguing a strained—and wrong—interpretation of Section 1407.

## II.    The record in Case Track Eight makes it abundantly clear that the only claim the MDL Court intended to be remanded for trial was Cobb County's claim against Publix for creating or contributing to a public nuisance.

Cobb County filed its original complaint on June 12, 2018, and filed an amended complaint on March 15, 2019, using a "short form" complaint approved by the MDL Court. (GA 1, OH 6).[2]  In its original complaint, Cobb County asserted eight claims for

---

[2] (a) "GA xx" refers to the N.D. Ga. docket, No. 18-cv-02865; (b) "OH xx" refers to the N.D. Oh. Cobb County docket, No. 18-op-45817; (c) "MDL xx" refers to the N.D. Oh. Master MDL docket, No. 17-md-2804; and (d) "JPML xx" refers to the JPML Docket in MDL No. 2804.

relief against 17 defendants[3]:  two separate RICO claims, violation of the Georgia Deceptive Trade Practices Act, Public Nuisance, Negligence, Unjust Enrichment, Fraud, and Civil Conspiracy. (GA 1). Cobb County's amended short form complaint did not assert any new claims for relief, but it did name 15 new corporate defendants (including Publix) as well as several individual members of the Sackler family, and it "expressly incorporated by reference" its original complaint "as if fully set forth herein." (GA 6, at 2); *see* Fed. R. Civ. P. 10(c).

After extensive proceedings in the MDL, which are more fully discussed below, the MDL Court elected to focus litigation efforts on claims against the "pharmacy defendants." Accordingly, it issued an order on March 11, 2021, directing the parties to select five "representative cases to proceed to trial." (MDL 3649). That order described exactly what the MDL Court sought to accomplish with those trials:

> The five selected cases will be set for bellwether trials against pharmacies only and must include the four national pharmacies that are in Track Three. The parties should discuss whether any regional or local pharmacies will be included. *Each case should only have one cause of action, presumably either public nuisance or RICO*. The purpose of selecting these cases is to provide a sufficient and representative number of verdicts, along with Track Three and any state cases that are tried, to provide a basis for global settlement.

(*Id*.) (emphasis added).

Cobb County's case was nominated by the defendants and selected by the MDL Court as "Case Track 8" (CT8) on April 9, 2021. (MDL 3674, 3688).[4] Consistent with the

---

[3] Some of the defendants had many affiliated companies that were individually named. For simplicity, Cobb County refers to the number of defendant "groups" that were sued.

[4] The "Pharmacy Defendants" that filed Dkt. #3674 were the "four national pharmacies" mentioned in the MDL Court's order:  CVS, Rite-Aid, Walgreens, and Walmart. Publix did not

MDL Court's case management order, once Cobb County was designated as a bellwether, it was permitted to amend its complaint, which it did on May 19, 2021, by filing its Supplemental and Amended Allegations to be Added to "Short Form for Supplementing Complaint and Amending Defendants and Jury Demand" ("Second Amended Complaint"). Cobb County's Second Amended Complaint also incorporated by reference its prior complaints, including all claims and allegations contained in each. (MDL 3736, ¶ 729). In accordance with the MDL Court's order quoted above, Cobb County elected to proceed on its previously asserted Fourth Claim for Relief: Public Nuisance, "reser[ving] all rights to prosecute its other claims for relief against all Defendants." (OH 22, ¶¶ 731-32).

Simultaneously with the filing of its Second Amended Complaint, Cobb County and other newly designated bellwether plaintiffs filed a Motion to Bifurcate Bellwether Claims for Separate Nuisance Trials, and to Stay Remaining Claims. (MDL 3734). Publix and the other pharmacy defendants opposed that motion, arguing that "at the suitable time, [the MDL] Court should ask the JPML to remand the new bellwether cases intact, including all claims against all parties, giving the trial judges the flexibility they need to try the cases in the manner they believe is most appropriate." (MDL 3746, at 2).

The MDL Court rejected the defendants' arguments and granted the motion, ordering separate trials under Fed. R. Civ. P. 42(b) in each of the five bellwether cases on

---

join in that filing, but neither did it object to it, even though the filing specifically identified Publix and Kroger as additional "pharmacy defendants" sued in the Cobb County case.

public nuisance only, and staying all remaining claims. (MDL 3750). The Court explained

its ruling as follows:

> Plaintiffs' proposal is permissible under Rule 42(b) as it will expedite and
> economize the resolution of these cases by simplifying the trial, make the
> case administratively manageable, and allow for focused assessment of
> claims and defenses relevant to a public nuisance action against the
> Pharmacy Defendants. Just as in Track Three, proceeding *only* against
> Pharmacy Defendants *on the public nuisance cause of action* in the five new
> bellwether trials will allow the parties to provide a more coherent
> presentation of the legal issues specific to the Pharmacy Defendants' *alleged
> liability for creating an opioid public nuisance*. The Pharmacy Defendants are
> all similarly situated and subject to the same claims, regulatory provisions,
> defenses, and types of proof. Each Pharmacy Defendant distributed
> controlled substances, including prescription opioids, to its own stores and
> dispensed those drugs from those same stores. *Bifurcating the public nuisance
> claims asserted against the Pharmacy Defendants will allow the Court to focus its
> attention on development and litigation of these issues and claims, which are likely
> to be applicable in many other MDL actions against these and similar defendants,
> on a bellwether basis*. This may also help facilitate settlement.

(MDL 3750, pp. 3-4, emphasis added).[5] The MDL Court issued a similar order in Case

Track 3, also over the defendants' objection, and that case ultimately went to trial in the

Fall of 2021 on the plaintiffs' public nuisance claims only.  (MDL 3315).

In light of the order separating Cobb County's public nuisance claim from its other

---

[5] Although Publix is not a nationwide chain pharmacy, it is a significant regional chain pharmacy in an area that has been particularly hard-hit by the opioid epidemic. As of 2022, Publix operated over 1,300 stores in Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia and over 1,200 of those stores had a pharmacy (MDL 5437-1 at 5), and it has grown since then. Accordingly, the MDL Court's selection of Cobb County's case as the CT8 bellwether has the potential to impact numerous other plaintiffs who have asserted claims against Publix. As of December 2022, there were approximately 50 cases in the MDL where Publix was named as a defendant; some claims have been settled since then, and other plaintiffs in the MDL have recently requested leave to amend their complaints to add Publix as a defendant. That motion remains pending in the MDL.

claims, Cobb County and Publix[6] engaged in discovery focused solely on the public nuisance claim, and only with regard to liability issues.[7] Publix obviously realized that public nuisance was the only "live" claim being litigated in Case Track 8 because, when it filed its motion to dismiss in the MDL Court, it only challenged Cobb County's public nuisance claim. (MDL 3906-1). This realization is further reflected in Publix's multiple attempts to get the MDL Court to certify questions about Georgia public nuisance law to the Georgia Supreme Court (MDL 4208, 5388), and multiple mandamus petitions filed in the Sixth Circuit seeking certification of questions related to Georgia public nuisance law (MDL 4291, 5474), all of which were denied (MDL 4245, 4465, 5425, 5846). None of Cobb County's other claims are mentioned in any of those filings—which is consistent with the MDL Court's stay of all claims other than the one selected by plaintiff at the Court's direction.

The MDL Court issued its original Suggestion of Remand for Case Track 8 on November 18, 2024 (JPML 9620) and a clarification of that Suggestion of Remand on November 22, 2024.  (OH 93).[8] The Panel issued a Conditional Remand Order that same

---

[6] Extensive discovery about the national pharmacies had already been done in connection with Case Track 3, so discovery in CT8 focused primarily on Publix and Kroger. Three of the four national pharmacies settled globally with plaintiffs, including Cobb County, while discovery was ongoing in the five bellwether cases (Rite Aid went bankrupt). Kroger also recently settled, before the MDL Court filed its suggestion of remand for CT8.

[7] *See* CT8 Case Management Order (MDL 3818) at 7 (limiting expert witness reports to liability experts only, excepting out "expert witnesses who will testify only in the abatement phase of the Track 8 trial.") This was consistent with how the public nuisance claim was treated in prior cases in the MDL Court and in other courts, where trial on the plaintiffs' public nuisance claim was typically divided into liability and abatement phases.

[8] Publix argues that the MDL Court's "clarification" resulted in a formal severance of claims under Fed. R. Civ. P. 21. (Br. at 5). That argument is misguided for several reasons. First, as

10

day (JPML 9621), which became final on December 3, 2024 (JPML 9623) and was filed in the transferor court on January 23, 2025. (GA 5).

On February 19, 2025, the Panel vacated its November 22, 2024, Conditional Remand Order (JPML 9629). The Panel acknowledged that its original CRO did not reflect the MDL Court's view of the limited scope of what was to be remanded to the transferor court for trial:

> To avoid any potential for confusion as to which claims remain pending in the transferee court and which are proceeding in the transferor court, it is necessary to vacate the prior remand order. The Panel will separately issue a new conditional remand order that separates and remands only the nuisance claims against pharmacy-defendant Publix.

(*Id.*). Accordingly, the Panel issued a "Separation of Certain Claims and Conditional Remand Order" that same day, which expressly ordered "that the nuisance claims against pharmacy-defendant Publix are separated and remanded to the transferor court." (JPML 9630).

---

discussed above, the MDL Court outlined a very specific strategy for testing claims by municipalities against pharmacies that was evident from his first order directing selection of bellwether cases for Case Tracks 7-11, and ordering that only one cause of action against one class of defendants (pharmacies) would move forward. (MDL 3649). Second, the MDL Court's order bifurcating and separating claims cited Fed. R. Civ. P. 42(b) as the basis for its ruling, not Rule 21 (and plaintiffs moved under Rule 42(b), not Rule 21). Third, the MDL Court's use of the term "sever" in the clarification was likely inadvertent, when "separated" would have been more accurate—especially since the MDL Court did not order the creation of a new, separate "severed" case, as Rule 21 requires. *See Brand Name II*, 264 F. Supp. 2d at 1376. And finally, even if the "clarification" did amount to a severance under Rule 21, that does not change the fact that the only thing intended by the MDL Court to be remanded for trial was Cobb County's public nuisance claim against Publix, as the extensive record demonstrates. Cobb County's comment about "severance" at the case management conference (see Br. at 7) was simply referring to the "separation" of claims, albeit using imprecise language. This, too, is another "form over substance" argument.

11

Notably, the Panel vacated its original CRO shortly after the MDL Court issued a suggestion of remand for the CT9 case — *Tarrant County* — and on the same day the Panel issued a conditional remand order for CT9. (JPML 9625). The *Tarrant County* suggestion of remand included specific language about the prior separation of claims ordered by the MDL Court that was absent from the *Cobb County* suggestion of remand. (JPML 9624 n.2). But the record in the MDL Court for both cases is the same with respect to the separation of claims issue. The order cited by the MDL Court in footnote 2 is the same order that separated Cobb County's public nuisance claim and stayed all other claims. (MDL 3750, cited above). That language would have alerted the Panel to the need to clarify the CT8 remand by vacating the original CRO and issuing a new CRO making clear that only Cobb County's public nuisance claim was being remanded for trial. Although Publix casts aspersions on both the Panel and the MDL Court, suggesting that some unspecified nefarious circumstance may explain the timing of the Panel's vacatur of its original CRO, (Br. at 9 n.5), the timing of the *Tarrant County* remand makes clear that such suspicions are unwarranted.

It cannot credibly be argued that merely omitting a reference to the prior separation of claims in the CT8 suggestion of remand should upend several years of work by the MDL Court to manage this litigation efficiently and with an eye toward conducting carefully structured trials designed to inform the parties and the MDL Court about the relative merits of the various claims asserted by the plaintiffs in this MDL against a multitude of defendants. The MDL Court's plan all along has been clear, the parties in

each of the five designated case tracks (Cobb, Tarrant, and the others) knew what that plan was, and they engaged in pretrial proceedings accordingly.  Publix's current effort to ignore that prior procedural history should be rejected.

III.    **The MDL Court's prior suggestions of remand in earlier case tracks reflected an overall case management strategy that differed from Case Tracks 7-11.**

As described above, the MDL Court was clear and explicit that its case management strategy for Case Tracks 7-11 was to focus the parties' efforts specifically on (1) claims by municipalities (2) against pharmacy defendants (3) for creating or contributing to a public nuisance.   This strategy differed in significant ways from the case management/remand strategy the MDL Court used earlier in the litigation, but the Court was likewise clear in describing its intentions back then.

On November 19, 2019, shortly after Case Track 1 settled on the eve of trial, the MDL Court issued a suggestion of remand requesting that three specific entire actions be remanded:  *San Francisco*, *Chicago*, and *Cherokee Nation*. (JPML 6242). Unlike *Cobb County* or *Tarrant County*, none of those cases had engaged in any case specific bellwether discovery in the MDL prior to remand.

In its suggestion of remand for those three cases, the MDL Court outlined the complexity of the litigation it was overseeing and explained its strategy. After observing that the litigation "presents much to manage and unravel," the MDL Court described the approach it intended to use, describing it as "parallel processing," or a "mode of operation in which a process is split into parts, which are executed simultaneously by different processors"—in this scenario, different courts. (*Id*. at 3 and n.3). The MDL Court

further described its strategy as utilizing a "hub-and-spoke model" that was "designed to accelerate and facilitate resolution of the *Opiate* MDL, in whole or in substantial part." (*Id.* at 7). The Panel issued a conditional remand order the following day approving the MDL Court's suggested approach. (JPML 6257).

The MDL Court reiterated this strategy six weeks later in its suggestion of remand for Case Track 2—*City of Huntington, W.V.* and *Cabell County*—stating, "[a]s explained in the *First Suggestion*, the undersigned will remain as the 'hub' of the MDL litigation and also the locus for global settlement, while the selected transferor courts will act as 'spokes,' supporting this global effort." (JPML 6676 at 3). Like the three cases in the first remand, no case specific discovery had occurred in the CT2 cases.

These various suggestions of remand reflect that the MDL Court employed different case management strategies at different times and clearly explained its strategy at each stage of the MDL, to the parties from the outset and to the Panel when it suggested remand. The "parallel processing" or "hub and spoke" approach discussed above was designed to bring additional judicial resources into the litigation in the early phases when the number and type of defendants was at a maximum, to oversee the remanded cases while the MDL Court focused on Case Track 1 (and later, Case Track 3)—cases that would eventually be tried in the MDL Court if they did not resolve before trial.[9] (JPML 2941 at 4-6). Indeed, at the time it suggested remands for *San Francisco, Chicago, Cherokee Nation,*

---

[9] All of the plaintiffs in Case Track 1 and Case Track 3 were governmental entities located within the boundaries of the Northern District of Ohio; each of the cases had been commenced in that district and would be tried there.

and *Huntington/Cabell*, the only cases for which the MDL Court was presiding over discovery were cases that would be tried (if at all) in that court. By the time the Court selected cases for CT7-11, however, it was unlikely that additional cases would be tried in the Northern District of Ohio. The MDL Court thus took a different approach:  unlike in the earlier remanded cases, the Court would oversee the bellwether case-specific discovery with respect to nuisance claims against specific types of defendants and would rule on *Daubert* and dispositive motions on those claims before it suggested remand for trial of that portion of the cases. This adjustment of its case management approach was well within the MDL Court's power. *See In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011) ("In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak.")

The MDL Court's original suggestion of remand for CT8 included a helpful chart depicting the variety of plaintiffs who have asserted claims in this MDL, the variety of defendants against whom claims have been asserted, and which defendants had reached settlement agreements in the MDL.

| Manufacturer Defendants | Municipalities | Tribes | TPPs | Hospitals |
|---|---|---|---|---|
| J&J | X | X | | |
| Teva | X | X | | |
| Allergan | X | X | | |
| Eight Smaller Defendants | X | X | N/A | N/A |
| Distributor Defendants | Municipalities | Tribes | TPPs | Hospitals |
| Cardinal | X | X | X | X |
| McKesson | X | X | X | X |
| Cencora | X | X | X | X |
| Pharmacy Defendants | Municipalities | Tribes | TPPs | Hospitals |
| Walmart | X | X | | |
| Walgreens | X | X | | |
| CVS | X | X | | |
| Kroger | X | X | N/A | N/A |
| Albertsons | | | N/A | N/A |
| Costco | | | N/A | N/A |
| Publix | | | N/A | N/A |

(JPML 9620).  This chart underscores why the MDL Court would have pivoted in its case management strategy. Several of the larger defendants had reached global settlement agreements, so it made sense to focus on the merits of the claims against the remaining defendants who had not settled.

As the MDL Court noted in its suggestion of remand, the "species of claim" to be tested in CT8 was Cobb County's public nuisance claim against Publix, which would be helpful to the MDL Court and the parties in evaluating other cases against Publix.  This surgical remand strategy was different, and was intended to be different, than what the MDL Court had done before, so any comparison by Publix to earlier suggestions of remand in the MDL is misplaced. Accordingly, Publix's discussion of the effect of those prior remands has no relevance to what the MDL Court was intending in this suggestion of remand.

16

IV.    **Section 1407 gives the Panel broad powers to carry out its coordination duties, and vacating the original CRO to ensure that the MDL Court's case management strategy was preserved is within those powers.**

As the Ninth Circuit Court of Appeals recently observed,

[Section 1407] grants unusually broad discretion to the [Panel] to carry out its assigned functions. This is confirmed by the statutory prohibition on proceedings for review of any order of the [JPML] except by extraordinary writ. The JPML comprises a panel of seven circuit and district judges designated by the Chief Justice of the United States, no two of whom shall be from the same circuit. These judges bring to bear decades of experience with more than a thousand MDL proceedings.

*Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, No. 23-3445, 2025 WL 748135, at *4 (9th Cir. Mar. 10, 2025) (cleaned up) (quoting *In re Collins*, 233 F.3d at 811; *FedEx Ground Package Sys., Inc. v. U.S. Jud. Panel on Multidistrict Litig.*, 662 F.3d 887, 891 (7th Cir. 2011); and 28 U.S.C. § 1407).

It is also apparent that the Panel retains at least some jurisdiction over coordinated proceedings during their pendency in the transferee court, to manage the needs of the overall litigation. For example, in *In re Helicopter Crash in Germany on Sept. 26, 1975*, the Panel originally transferred cases to the Eastern District of California. However, subsequent developments led the Panel to conclude that a retransfer was appropriate. So the Panel vacated its original transfer order and entered a new order transferring all cases to the District of Connecticut. 443 F. Supp. 447, 450 (J.P.M.L. 1978); *see also In re Petroleum Prods. Antitrust Litig.*, 419 F. Supp. 712, 715 (J.P.M.L. 1976) (vacating order transferring cases to the District of Connecticut and entering new order transferring cases to the

Central District of California).[10]

To be sure, the Panel does not view such retransfers lightly, describing its "extreme[] reluctan[ce] to retransfer litigation under Section 1407." *In re Petroleum Prods.*, 419 F. Supp. at 719. The Panel has also stated that retransfers will "occur only in the most extraordinary instances." *In re Helicopter Crash*, 443 F. Supp. at 450. That reluctance is warranted because "effort expended by the original transferee court in supervising the litigation would be wasted." *In re Petroleum Prods.*, 419 F. Supp. at 719. Here, the inverse of that concern is implicated:  if the Panel does *not* stand by its decision to vacate the original CRO and issue the new CRO specifically separating Cobb County's public nuisance claim, then the MDL Court's carefully devised remand strategy for the unsettled pharmacy defendants will be undermined. The Panel should not allow Publix to disrupt the MDL Court's plan simply because of some potentially "loose" language, particularly when the overall record makes abundantly clear what was intended by the MDL Court.

## V.    Speculation about what an appellate court might do is not a sufficient basis to upend the MDL Court's case management strategy.

Finally, Publix argues it is *possible* that trial of the remanded public nuisance claim will not result in a final, appealable judgment. But speculating about what an appellate court might or might not do is not a sufficient basis to throw out several years of the MDL Court's work, particularly given the complexity of this MDL and the fact that so many

---

[10] *See also* Roberts, *Multidistrict Litigation and the Judicial Panel, Transfer and Tag-Along Orders Prior to A Determination of Remand: Procedural and Substantive Problem or Effective Judicial Public Policy*, 23 MEM. ST. U. L. REV. 841, 861 (1993) ("Once cases are transferred, the Judicial Panel loses most of its functional jurisdiction, although it retains tentative supervisory jurisdiction.")

"species of claim" have been resolved precisely because of the MDL Court's careful management.  And, Publix's argument fails in any event.

Under the new conditional remand order, the only matter to be tried by the transferor court is whether Publix is liable to Cobb County for creating a public nuisance in that community, and if so, what the remedy should be. Accordingly, since there is only one claim and one party on each side in the transferor court, any judgment entered by the transferor court would have the effect of fully adjudicating the rights and liabilities of the parties. *See, e.g.*, Fed. R. Civ. P. 54(b).

Alternatively, because there are other claims by Cobb County still pending in the MDL Court (but stayed), the transferor court will have the ability under Rule 54(b) to direct entry of a partial final judgment even if the judgment only adjudicates part of Cobb County's universe of claims against Publix. That is what the MDL Court did following the Case Track 3 trial.  (MDL 4614). In the Eleventh Circuit (where the trial will take place), the district court must engage in a two-step analysis under Rule 54:

> First, the court must determine that its final judgment is, in fact, both final and a judgment. That is, the court's decision must be "final" in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action, and a "judgment" in the sense that it is a decision upon a cognizable claim for relief.
>
> Second, if the district court determines that its decision is a final judgment, the district court must then determine that there is no just reason for delay in certifying its decision as final and immediately appealable. This second determination requires the district court to consider judicial administrative interests—including the historic federal policy against piecemeal appeals—and the equities involved. Because Rule 54(b) certifications depart from that historic federal policy, we have explained that certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are

19

> outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

*Peden v. Stephens*, 50 F.4th 972, 977–78 (11th Cir. 2022) (cleaned up). After trial, the CT8 case will surely satisfy both prongs. Because the only claim remanded for trial is Cobb County's public nuisance claim against Publix, any judgment entered after trial would be an "ultimate decision of an individual claim" and a "decision upon a cognizable claim for relief." And just as the MDL Court found in Case Track 3 (*see* MDL 4614 at 2), there would be "no just reason for delay" of an appeal from a judgment in this case. Thus, it is clear that the trial court could (and extremely likely that it will) enter such a partial final and appealable judgment after trial.

The cases relied upon by Publix do not undermine this view. In both *Scott v. Advanced Pharm. Consultants, Inc*., 84 F.4th 952 (11th Cir. 2023), and *Lloyd Noland Found., Inc. v. Tenet Health Care Corp*., 483 F.3d 773 (11th Cir. 2007), the district court granted summary judgment on some claims, but not all, and certified those interlocutory orders for appeal. Not surprisingly, the Eleventh Circuit held that neither situation was appropriate for Rule 54(b) certification. The same is true for *Peden v. Stephens*, 50 F.4th 972 (11th Cir. 2022), cited above; it also involved a summary judgment that did not resolve all claims between all parties. Those cases present vastly different circumstances from what is present here, where this case is part of a vast MDL and has undergone years of pretrial activity (not merely a summary judgment) and is being tried to test the viability of a particular claim that has implications beyond simply the dispute between Cobb County and Publix.

20

Accordingly, this is a case where the concern about piecemeal appeals is indeed "outbalanced" by the needs of the litigants to obtain appellate review. While it is impossible to predict what might happen at trial, or what might happen in the Eleventh Circuit following trial, it is undoubtedly true that Federal Rule of Civil Procedure 54(b) applies with the same force in the Eleventh Circuit as it does in the Sixth Circuit, which did not question the MDL Court's Rule 54(b) certification in the appeal of the CT3 case. That the Eleventh Circuit might be more particular in deciding the circumstances under which Rule 54(b) certification is appropriate does not change the fact that Rule 54(b) certification is available to the transferor court to enter a final judgment so that the parties can seek appellate review. And the circumstances present in this case certainly make Rule 54(b) certification appropriate (assuming the rule even applies, as noted above).

## CONCLUSION

The complexity of MDL 2804 is impossible to overstate. The MDL Court has worked for more than seven years to guide this litigation and has used its discretion to focus on the various categories of claims and parties that, in its view, are most likely to lead to resolution, whether by settlement or trials. Moreover, that guidance has resulted in massive settlements earmarked for opioid abatement efforts nationwide. The MDL Court's case management and remand strategy was clearly communicated to the parties at the outset, and the parties' pretrial conduct conformed to that strategy.

Publix should not now be allowed to throw out that carefully implemented strategy based on semantic arguments that put form over substance. The MDL Court's intent was clear, and the Panel's orders honor that intent. Publix's motion to vacate

should be denied.

Respectfully submitted,

 /s/ Jayne Conroy
Jayne Conroy
Laura Fitzpatrick
Mildred Conroy
Justin Presnal
Thomas I. Sheridan, III
**SIMMONS HANLY CONROY LLP**
112 Madison Avenue
New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com
lfitzpatrick@simmonsfirm.com
mconroy@simmonsfirm.com
jpresnal@simmonsfirm.com
tsheridan@simmonsfirm.com

Sarah Burns
Jo Anna Pollock
**SIMMONS HANLY CONROY LLP**
One Court Street
Alton, IL 62002
(618) 259-2222
sburns@simmonsfirm.com
jpollock@simmonsfirm.com

Erin K. Dickinson
Charles J. Crueger
**CRUEGER DICKINSON LLC**
4532 N Oakland Avenue
Whitefish Bay, WI 53211
(414) 210-3868
ekd@cruegerdickinson.com
cjc@cruegerdickinson.com

**COBB COUNTY ATTORNEY'S OFFICE**
H. William Rowling, Jr.
County Attorney
H.William.Rowling@cobbcounty.org
Lauren S. Bruce
Assistant County Attorney
State Bar No.: 796642

23

Lauren.Bruce@cobbcounty.org
100 Cherokee Street, Suite 350
Marietta, Georgia, 30090
Tel. No.:  (770) 528-4000
Fax. No.:  (770) 528-4010

*Counsel for Cobb County*